RTG for AUSA DiGiacio

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

AUG 1 7 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   '18 MJ 1 0 0 1 3
Black Apple iPhone Seized from Antonio )
Waldo-Ramirez )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated herein)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of a Controlled Substance |

The application is based on these facts:
See Affidavit of Special Agent William Howland (incorporated herein)

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent William Howland
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 17, 2018 @ 10:00 a.m.

City and state: El Centro, CA

Hon. Peter C. Lewis, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A
# PROPERTY TO BE SEARCHED

A black Apple iPhone cellular phone seized from Antonio WALDO-Ramirez on January 13, 2018 at the Calexico, California West Port of Entry. It is currently in the possession of the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent in Charge, Calexico, California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the Target Telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Telephone described in Attachment A will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from December 1, 2017 to January 14, 2018:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling narcotics from Mexico to the United States and within the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of narcotics from Mexico to the United States and within the United States, such as stash houses, load houses, or delivery points.

    e. tending to identify the user of, or persons with control over or access to, the subject phones; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

The seizure and search of the cellular phone shall follow the procedures outlined in the supporting affidavit.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Black Apple iPhone Seized from Antonio Waldo-Ramirez | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, William Howland, Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), having been duly sworn, state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search: A black Apple iPhone cellular phone (hereinafter "Target Telephone") seized from Antonio WALDO-Ramirez (hereinafter "WALDO"), as more particularly described in Attachment A.

2. Target Telephone was seized from WALDO on or about January 13, 2018 at about the time of his arrest. It is believed that Target Telephone was used by WALDO to communicate with co-conspirators during a drug smuggling event on January 13, 2018. WALDO has been charged with importation of 10.82 kilograms of methamphetamine in the Southern District of California. Probable cause exists to believe that Target Telephone contains evidence relating to violations of Title 21, United States Code Sections 952 and 960. Target Telephone is currently in the possession of the Department of Homeland Security, Homeland Security Investigations (HSI), Deputy Special Agent in Charge, located in Calexico, California.

3. Based on the information below, there is probable cause to believe that a search of Target Telephone will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within DEA and the Department of Homeland Security. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 21, United States Code, Sections 952, and 960, described in Attachment B, is located on the cellular phone described in Attachment A.

**EXPERIENCE AND TRAINING**

5.     I am a Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since September 2015. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered to conduct investigations of and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code.

6.     I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center (FLETC). During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence, all in relation to violations of the United States Code.

7.     Prior to my work as an HSI Special Agent, I was employed as a United States Border Patrol Agent with Customs and Border Protection and an Immigration Enforcement Agent with ICE Enforcement and Removal Operations. I am presently assigned to the HSI

Imperial Valley Border Enforcement Security Task Force (IVBEST) Human Trafficking and Human Smuggling Group in El Centro, California.

8. By virtue of my employment and experience as a Special Agent with HSI, I have performed various tasks, which include, but are not limited to:

    a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    b. Participating in the tracing of monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

    c. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

    d. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of drugs.

9. Through the course of my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for drug smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of hard drugs, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Drug smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe

law enforcement cannot track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

   f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This

4

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation methamphetamine or some other controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated here are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of 21 U.S.C. §§ 952, 960, 963.

5

# STATEMENT OF PROBABLE CAUSE

13. The information in this Statement of Probable Cause is based on reports of the event provided to this affiant. On January 13, 2018, at approximately 10:45 p.m., WALDO drove a 2015 Honda Accord, bearing a California license plate, 7RCT121, to the Calexico, California West Port of Entry, and applied for entry into the United States. According to documents found in the vehicle, another person (Berenice Ortiz) is the registered owner of the vehicle since January 4, 2018.

14. Customs and Border Protection ("CBP") Officer E. Lopez-Velarde asked WALDO where he was going, and WALDO told the officer that he was headed to Brawley, California. WALDO also stated that he lived in Stockton, California, but had been staying in Brawley at the time. WALDO stated that he went to Mexico to visit for one day. The officer inspected the vehicle and removed the rocker panel plastic cover behind the driver seat. When he did, he observed an object wrapped in brown packaging tape. WALDO interrupted the officer's inspection by telling him that he had opened the trunk of the vehicle for him to inspect, and that he bought a statue while waiting in line. The officer continued his inspection by removing the plastic cover on the passenger side rocker panel and saw a similar object wrapped in brown packaging tape.

15. The officer told WALDO to turn off his vehicle and exit it. As WALDO exited, he grabbed the Target Telephone and held onto it until he was brought to the security office.

16. A further inspection of the vehicle revealed an access panel secured by Velcro to the rocker panels. CBP Officer E. Pelayo removed one of the packages. It contained a crystalline substance that field-tested positive for methamphetamine. After removing the front seats and carpet, CBP Officer Pelayo could see the access panels on both sides. A total of 83 similar packages were removed from the rocker panels. The packages weighed approximately 10.82 kilograms.

17. CBP Officer Pelayo placed WALDO under arrest during this time, and seized the Target Telephone from him as evidence.

18. Crossing history records show that WALDO first crossed from Mexico into the United States in the vehicle on December 5, 2017.

19. Based upon my experience and investigation in this case, I believe that WALDO, as well as other persons, was involved in an on-going conspiracy to import, transport, possess, and distribute methamphetamine throughout the State of California. Based on my experience investigating narcotics smugglers, I also believe that WALDO used the Target Telephone to coordinate with co-conspirators regarding the transportation and delivery of the methamphetamine and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, phone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of electronic devices described herein, which identify other persons involved in narcotics trafficking activities.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the methamphetamine smuggling of WALDO, and co-conspirators, such as phone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the electronic device described herein. Given WALDO's and the vehicle's crossing history, I believe that relevant information is stored on Target Telephone from December 1, 2017 to January 14, 2018.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE CELLULAR TELEPHONE

21. It is not possible to determine, merely by knowing the cellular telephone's make, and FCC, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers

7

allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

24. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952 and 960 may be located on Target Telephone described in Attachment A. I,

therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

William Howland
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this _17_ day of August, 2018

THE HONORABLE PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

9